# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# DOCKET NO. 3:08-cv-00445-W

| | |
|---|---|
| **COMMODITY FUTURES TRADING COMMISSION,** ) | ) |
| ) | |
| **Plaintiff,** ) | **ORDER FOR FINAL JUDGMENT** |
| ) | **BY DEFAULT, PERMANENT** |
| vs. ) | **INJUNCTION, RESTITUTION,** |
| ) | **CIVIL MONETARY PENALTY** |
| **MCCALL BUSINESS GROUP, LLC, MGB** ) | **AGAINST DEFENDANTS** |
| **GLOBAL, LLC, and TYRONE "CAUZAE"** ) | **McCALL BUSINESS GROUP, LLC** |
| **MCCALL,** ) | **AND MBG GLOBAL, LLC** |
| ) | |
| **Defendants.** ) | |
| ) | |

On September 26, 2008, Plaintiff the U.S. Commodity Futures Trading Commission (the "Commission") filed a Complaint in this civil action against Defendants McCall Business Group, LLC ("MBG"), MBG Global, LLC ("MBG Global") and Tyrone "Cauzae" McCall ("McCall") seeking injunctive and other legal and equitable relief for violations of Sections 4b(a)(2)(i), (iii) and 4o(1)(A) and (B) of the Commodity Exchange Act, (the "Act"), 7 U.S.C. §§ 6b(a)(2)(i), (iii) and §§ 6o(1)(A) and (B) (2006).[1]

Defendants MBG and MBG Global failed to appear or answer the Complaint within the time permitted by Fed. R. Civ. P. 12(a)(1). Accordingly, on April 2, 2009, the Clerk of this Court entered a default against Defendants MBG and MBG Global.

The Commission has moved this Court to grant final judgment by default against Defendants MBG and MBG Global, order permanent injunctive relief, and impose a restitution obligation and civil monetary penalty (Doc. No. 36). Based upon the Commission's memorandum in support of its

---

[1] The Commission settled its claims against Defendant McCall separately from Defendants MBG and MBG Global. See Motion to Enter Consent Order for Permanent Injunction, Restitution, Civil Monetary Penalty and Other Ancillary Relief Against Defendant McCall (Doc. No. 37).

motion, the record in this case, and the Court being otherwise advised in the premises, and it is hereby:

ORDERED that Plaintiff's Motion for Final Judgment by Default, Permanent Injunction, Restitution and Civil Monetary Penalty against Defendants MBG and MBG Global (Doc. No. 36) is **GRANTED** and judgment by default, permanent injunction, restitution and civil monetary penalty is hereby entered. Accordingly, the Court enters the following findings of fact and conclusions of law finding Defendants MBG and MBG Global liable as to all claims against the corporate entities in the Complaint.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore further directs the entry of Findings of Fact, Conclusions of Law, and an Order of Permanent Injunction, Restitution, Civil Monetary Penalty pursuant to Section 6c of the Act, as set forth herein.

**A.     Jurisdiction and Venue**

1. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006) which authorizes the Commission to seek injunctive relief against any person, or, to enforce compliance with the Act, whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order there under.

2. Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006) because Defendants MBG, MBG Global and McCall transacted business, among other places, in this district, and certain of the transactions, acts, practices, and courses of business in violation of the Act have occurred, among other places, within this district.

**B.     Parties**

3.     Plaintiff U.S. Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with responsibility for administering and enforcing the provisions of the Act, 7 U.S.C. §§ 1 et seq. (2006), and the Commission Regulations ("Regulation") promulgated thereunder, 17 C.F.R. §§ 1.1 et seq. (2009).

4.     Defendant McCall Business Group, LLC is a Connecticut corporation whose principal place of business is located at 6123 Providence Glen Road, Charlotte, North Carolina. MBG was incorporated in January of 2003. McCall is the president of MBG. MBG has never registered with the Commission in any capacity.

5.     Defendant MBG Global, LLC is a North Carolina corporation whose principal place of business is located at 6123 Providence Glen Road, Charlotte, North Carolina 28270. MBG Global was incorporated in May of 2007, but commenced operations as early as 2004. McCall is the president of MBG Global. MBG Global has never registered with the Commission in any capacity.

**C.     Findings of Fact**

6.     Starting in September 2003, McCall, individually and as the agent of MBG, began to solicit individuals to trade on their behalf in the futures markets. In 2004, McCall formed the commodity pool, MBG Global, to market his financial programs towards churches and their congregations.

7.     In an effort to target church organizations and members, McCall attended church conventions and circulated MBG Global materials. He told congregations their wealth would increase if he traded on their behalf because of his experience and expertise trading in the futures and securities markets.

8. McCall also invited individuals from congregations to his home for presentations on MBG Global. During the presentations, solicitation materials entitled "MBG Global: Building, Sharing, Spreading Wealth" were handed out to the attendees. McCall reviewed the materials with the attendees and verbally highlighted key points in the literature, including that MBG Global provided a guaranteed return of principal, no fees, not less than 18% return, optional monthly disbursements, diversification, protection from overnight price drops, and consistent returns. The solicitation materials included charts and matrices that graphically illustrated a MBG Global pool participant's potential profit if they invested funds with MBG Global.

9. McCall also told prospective pool participants that he made money by keeping the difference between the promised (18% or greater) return and the high (36% to 40%) returns he generated from trading.

10. These statements were false. McCall, knew these statements were false or was reckless in making such statements because, as set forth below, he knew no profits were ever generated from his trading. Additionally, McCall, individually and as the agent of MBG and/or MBG Global, did not disclose the risks of trading commodity futures in the written solicitation materials or during his personal solicitations of prospective and actual pool participants.

11. To support the claims made in the solicitation materials, McCall, individually and as the agent of MBG and/or MBG Global, misrepresented his background and expertise by falsely stating that he enjoyed an illustrious career on Wall Street with a major investment firm. McCall knew these representations were false or was reckless in making such claims. For example, in account opening documents filled out by McCall in January of 2004 for a TradeStation futures trading account, he indicated he had no experience trading in futures.

12. Relying upon the false claims of profits and McCall's vast experience, commodity pool participants gave money to MBG's and MBG Global's agent McCall to trade their funds.

13. McCall, individually and as the agent of MBG and/or MBG Global, drafted agreements with the pool participants that guaranteed a return of anywhere from 18% to 60% within a 6 month or 12 month time frame. In addition, the agreements stated that pool participants could elect instead to have monthly payouts. After executing the agreements, pool participants wired their funds into bank accounts held in the name of MBG and/or accounts controlled by McCall or his wife Terrilynn McCall.

14. McCall, individually and as the agent of MBG and/or MBG Global, misappropriated pool participants' funds by either using money deposited by new pool participants to pay off other pool participants in a manner characteristic of a ponzi scheme and/or using the money deposited by pool participants for his personal use. The misappropriation of funds occurred through a complicated web of numerous bank accounts from which pool participants' funds were deposited and then transferred in various dollar amounts to other bank accounts controlled by either McCall or his wife Terrilynn McCall.

15. A nominal amount of pool participants' funds was transferred into futures trading accounts. From October of 2004 through August of 2006 and October of 2007 to April of 2008, approximately $400,000 of pool participants' funds were transferred from bank accounts controlled by McCall or his wife, Terrilynn McCall, into four trading accounts held at various futures commission merchants ("FCMs") in the name of MBG, MBG Global or Terrilynn McCall.

16. McCall did engage in a small amount of futures trading. Of the $400,000 of pool participants' funds deposited into futures trading accounts during this time frame, McCall withdrew approximately $248,000 for his personal use and lost approximately $138,000 in trading futures,

which was consistent with his regular pattern of trading losses. While McCall incurred trading losses and misappropriated funds, he continued to solicit prospective and actual pool participants, through MBG and/or MBG Global, with claims of profitability.

17. Since at least the fall of February 2004, and continuing to the present, all of the defendants' pool participants have made demands for the return of their funds. To date, the defendants have only returned approximately $125,000 of customer money to the pool participants.

18. McCall, a individually and as the agent of MBG and/or MBG Global, also concealed from actual and prospective pool participants a Cease and Desist Order filed by the State of Connecticut against McCall for securities fraud. When prospective pool participants inquired about the actions taken by the State of Connecticut against McCall, he denied any wrong doing and blamed the financial industry as a whole for trying to prevent him from teaching the average person how to make money. These misrepresentations and omissions prevented actual and potential pool participants from suspecting and/or learning that McCall, individually and as the agent of MBG and/or MBG Global, was operating a business based on deception and fraud.

19. At all times relevant hereto, McCall was acting as an employee and agent of MBG and MBG Global. McCall is the founder, president and sole employee of both MBG and MBG Global.

**D. Conclusions of Law**

*i). Fraud by Material Misrepresentation and Omissions*

20. Under Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), in relevant part, it is unlawful for any person, in connection with any order to make or the making of a futures contract, for or on behalf of any other person, (i) to cheat or defraud or attempt to cheat or defraud other persons, and (iii) to willfully deceive or attempt to deceive such other

person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract.

21. By the conduct described in paragraphs 6 through 19 above, McCall, individually and as the agent of MBG and/or MBG Global, violated Sections 4b(a)(2)(i) and (iii) of the Act, by failing to disclose material facts to actual and prospective pool participants, misrepresenting material facts to actual and prospective pool participants, and misappropriating their funds in connection with the order to make or the making of a futures contract, for or on behalf of actual and prospective pool participants.

*(ii).  Fraud by a Commodity Pool Operator*

22. As defined in Section 1a(5) of the Act 7 U.S.C. § 1a(5) (2006), a commodity pool operator ("CPO") is any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

23. Section 4o(1) of the Act, 7 U.S.C. § 6o(1) (2006), in relevant part, prohibits CPOs from using the mails or any other means of interstate commerce to:

(A) employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

24. By the conduct described in paragraphs 6 through 19 above, McCall, individually and as the agent of MBG and/or MBG Global, employed a device, scheme or artifice to defraud pool

participants and prospective pool participants or engaged in a transaction, practice or course of business knowingly or which operated as a fraud or deceit upon pool participants and prospective pool participants in violation of Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006), as set forth above, including by: (1) making fraudulent representations concerning McCall's trading experience and performance, (2) guaranteeing profits and interest in connection with futures trading, (3) failing to disclose the Cease and Desist Order filed by the State of Connecticut against McCall and MBG for securities fraud, (4) failing to disclose the risks of trading commodity futures, and (5) misappropriating pool participants' funds.

25. By the conduct described in paragraphs 6 through 22 above, McCall, individually and as the agent of MBG and/or MBG Global, acted as an unregistered CPO by soliciting, accepting or receiving funds from others and engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, for the purpose of trading in futures.

*(iii). MBG and MBG Global are Liable for the Acts of Their Agent, McCall*

26. Section 2(a)(1)(B) of the Act, 7 U.S.C. §2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009) provides, in pertinent part: "The act, omission, or failure of any official, agent, or other person acting for an individual, association, partnership, corporation or trust within the scope of his employment or office shall be deemed the act, omission or failure of such individual, association, partnership, corporation, or trust, as well as of such official, agent or person."

27. Accordingly, strict liability is imposed upon principals for the actions of their agents. Rosenthal & Co. v. CFTC, 802 F.2d 963, 966 (7th Cir. 1986); Dohmen-Ramirez & Wellington Advisory, Inc. v. CFTC, 837 F.2d 847, 857-58 (9th Cir. 1988).

28. McCall is the founder, president, sole employee of both MBG and MBG Global and as such, the principal-agent relationship is manifest.

29. At all times throughout the relevant period, McCall's fraudulent activities, which violated the Act and Regulations, occurred in his capacity as an employee and agent of both MBG and MBG Global.

30. Accordingly, MBG and MBG Global are strictly liable for McCall's violations of Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006) and Sections 4o(1)(A) and (B) of the Act, 7 U.S.C. §§ 6o(1)(A) and (B) (2006) of the Act described above, pursuant to Section 2(a)(1)(B) of the Act, 7 U.S.C. §2(a)(1)(B) (2006), and Regulation 1.2, 17 C.F.R. § 1.2 (2009).

## II. ORDER FOR RELIEF

### A. Permanent Injunction

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

31. Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), MBG and MBG Global, in or in connection with any order to make, or the making of, any contract of sale of any commodity:

   a. in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or

   b. for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,

are permanently restrained, enjoined and prohibited from directly or indirectly: cheating or defrauding or attempting to cheat or defraud any other person; and/or deceiving or attempting to

deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a) of the Act, 7 U.S.C. §§ 6b(a) (2006).

32. MBG and MBG Global are permanently restrained, enjoined and prohibited from directly or indirectly: while acting as a CPO, using the mails or other means or instrumentalities of interstate commerce, to employ a device, scheme or artifice to defraud any clients or participants, or prospective clients or participants or engage in a transaction, practice or course of business which operates as a fraud or deceit upon any clients or participants or prospective clients or participants, in violation of Section 4o(1) of the Act, 7 U.S.C. § 6o (2006).

33. MBG and MBG Global are permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in:

    a.    trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

    b.    entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and/or 2(c)(2)(C)(i) of the Act, 7 U.S.C. §§ 2(c)(2)(B) and/or 2(c)(2)(C)(i)) ("forex contracts") for their own personal account or for any account in which either MBG and/or MBG Global have a direct or indirect interest;

    c.    having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

    d.    controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

    e.    soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

    f.    applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

    g.    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

34.    The injunctive provisions of this Order shall be binding upon MBG and MBG Global, upon any person who acts in the capacity of agent, employee, attorney, successor and/or assign of MBG and/or MBG Global McCall and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with MBG and/or MBG Global.

**B.**     **Restitution**

IT IS FURTER ORDERED that:

35.    MBG and MBG Global shall pay restitution, jointly and severally, in the amount of $1,027,000, plus post-judgment interest ("Restitution Obligation").

36. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

37. MBG and MBG Global shall satisfy this Restitution Obligation by making payments to the National Futures Association ("NFA") as the Monitor ("Monitor"). The Monitor shall collect restitution payments from MBG and MBG Global and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, the Monitor shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

38. MBG and MBG Global shall make restitution payments to the Monitor in the name "McCall Business Group, LLC and MBG Global, LLC–Restitution Fund" and shall send such restitution payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to Office of Administration, National Futures Association, 200 W. Madison Street #1600, Chicago, Illinois 60606-3447 under cover letter that identifies McCall and the name and docket number of the proceeding. MBG and MBG Global shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement at the same address.

39. The Monitor shall oversee MBG and MBG Global's Restitution Obligation and shall have discretion to determine the manner for distribution of funds in an equitable fashion to the pool claimants whose claims are or have been allowed in the claims process, or may defer distribution until such time as it deems appropriate. In the event that the amount of restitution payments to the

Monitor are of a de minimis nature such that the Monitor determines that the administrative costs of the making a restitution distribution is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission.

40. To the extent that any funds accrue to the U.S. Treasury as a result of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement to pool participants in accordance with the procedures set forth in the preceding paragraph.

41. Pursuant to Rule 71 of the Federal Rules of Civil Procedure, MBG and MBG Global pool participants are explicitly made intended third-party beneficiaries of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution which has not been paid by MBG and/or MBG Global.

**C.** **Civil Monetary Penalty**

IT IS FURTHER ORDERED that:

42. MBG and MBG Global shall pay a civil monetary penalty, jointly and severally, in the amount of $1,027,000, plus post judgment interest ("CMP Obligation").

43. Post-judgment interest on the CMP Obligation shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

44. MBG and/or MBG Global shall pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

>Commodity Futures Trading Commission
>Division of Enforcement
>Attn: Marie Bateman-AMZ-300,
>DOT/FAA/MMAC
>6500 S. MacArthur Blvd.
>Oklahoma City, OK 73169
>Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, MBG and/or MBG Global shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. MBG and/or MBG Global shall accompany the payment of the penalty with a cover letter that identifies MBG, MBG Global, and the name and docket number of this proceeding. MBG and/or MBG Global shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

**D.  Provisions Related To Monetary Penalties And Partial Payments**

45.  All payments by MBG and/or MBG Global pursuant to this Order shall first be applied to satisfaction of the Restitution Obligation, consistent with the authority granted to the Monitor as stated above. After satisfaction of the Restitution Obligation, payments by MBG and/or MBG Global pursuant to this Order shall be applied to satisfy the CMP obligation.

46.  Any acceptance by the Commission and/or Monitor of partial payment from MBG and/or MBG Global of the Restitution Obligation and/or CMP Obligation shall not be deemed a waiver of MBG and MBG Global's requirement to make further payments pursuant to this Order, or a waiver of the Commission's and/or Monitor's right to seek to compel payment of any remaining balance.

47. Upon full satisfaction of MBG and MBG Global's Restitution and Civil Monetary Penalty obligation, satisfaction of judgment will be entered as to Defendants MBG and MBG Global.

**E. Miscellaneous Provisions**

48. All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

> Notice to Commission:
> Director
> Division of Enforcement
> U. S. Commodity Futures Trading Commission
> 21st Street NW
> Washington, DC 20581

49. If any provision of this Order, or the application of any provisions or circumstances are held invalid, the remainder of the Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

50. This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

**IT IS SO ORDERED.**

Signed: April 22, 2010

Frank D. Whitney
United States District Judge