UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

COMMODITY FUTURES TRADING
COMMISSION,

                              Plaintiff,

                vs.

McCALL BUSINESS GROUP, LLC,
MBG GLOBAL, LLC, and
TYRONE McCALL,

                              Defendants.

Case No. 3:08-CV-445

Judge Frank D. Whitney

Magistrate Judge David C. Kessler

CONSENT ORDER FOR PERMANENT INJUNCTION, RESTITUTION, CIVIL
MONETARY PENALTY AND ANCILLARY EQUITABLE RELIEF AGAINST
DEFENDANT TYRONE CAUZAE McCALL

On September 29, 2008, the Commodity Futures Trading Commission ("Commission" or

"Plaintiff") filed a Complaint against defendants McCall Business Group, LLC ("MBG"), MBG

Global, LLC ("MBG Global") and Tyrone "Cauzae" McCall ("McCall") alleging defendants

violated anti-fraud provisions of Sections 4b(a)(2)(i) and (iii) and 4o(1)(A) and (B) of the

Commodity Exchange Act ("Act"), as amended, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) and 6o(1)(A)

and (B) (2006). The Complaint sought, *inter alia*, injunctive relief, disgorgement, restitution,

and civil monetary penalties.

On April 2, 2009, the Court granted Plaintiff's Motion for Entry of a Clerk's Default

Against Defendants McCall Business Group, LLC and MBG Global, LLC for failure to plead an

Answer to Plaintiff's Complaint pursuant to Fed. R. Civ. P. 55(a). The Court granted the

Commission's motion and entered the default against MBG and MBG Global. Therefore, only a Final Judgment by Default remains to be obtained for the corporate defendants.

## I.    CONSENTS AND AGREEMENTS

To effect settlement of the matters alleged in the Complaint against McCall, without a trial on the merits or any further judicial proceedings, McCall:

1.     Consents to the entry of this Consent Order of Permanent Injunction, Restitution, Civil Monetary Penalty and Other Equitable Relief Against Defendant Tyrone Cauzae McCall ("Order").

2.     Acknowledges service of the Summons and Complaint.

3.     Admits that this Court has jurisdiction over him and the subject matter of this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, which authorizes the Commission to seek injunctive relief against any person whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order thereunder.

4.     Admits that venue properly lies with this Court pursuant to Section 6c of the Act, 7 U.S.C. §13a-1, in that certain of the acts and practices alleged in the Complaint for Injunctive and Other Equitable Relief and Civil Monetary Penalties Under the Commodity Exchange Act occurred in this District.

5.     Waives:

   (a) any and all claims that he may possess under the Equal Access to Justice Act (EAJA), 5 U.S.C. § 504 (2006) and 28 U.S.C. § 2412 (2006), relating to, or arising from, this action;

   (b) any and all claims that he may possess under the Small Business Regulatory Enforcement Fairness Act, 1996 HR 3136, Pub. L. No. 104-121, §§ 231- 223, 110 Stat. 862-63 (1996), as amended by Pub. L. No. 110-28, 121 Stat. 112 (2007), relating to, or arising from, this action;

2

(c) any claim of Double Jeopardy based upon the institution of this proceeding or the entry in this proceeding of any order imposing a civil monetary penalty or any other relief; and

(d) any and all rights of appeal from this action.

6.      Neither admits nor denies the allegations of the Complaint or the findings of fact and conclusions of law in this Order. However, McCall agrees and intends that all of the allegations of the Complaint and all of the findings of fact and conclusions of law made by this Court and contained in Part II of this Order shall be taken as true and correct and be given preclusive effect, without further proof, in the course of: a) any current or subsequent bankruptcy proceeding filed by, or on behalf of, or against him; b) a proceeding to enforce this Order; and/or c) any proceeding pursuant to Section 8a of the Act, 7 U.S.C. § 12a(1), and/or Part 3 of the Commission's Regulations ("Regulations"), 17 C.F.R. §§ 3.1 *et seq.*

7.      Agrees to provide immediate notice to the Commission of any bankruptcy filed by, on behalf of, or against him in the manner required by Part III. F. of this Order.

8.      Agrees that no provision of this Order shall in any way limit or impair the ability of any person to seek any legal or equitable remedy against McCall or any other person in any other proceeding.

9.      Agrees that neither he nor any of his agents or employees under his authority or control shall take any action or make any public statement denying, directly or indirectly, any allegation in the Complaint or findings or conclusions in this Order, or creating, or tending to create, the impression that the Complaint or this Order is without a factual basis; provided, however, that nothing in this provision shall affect McCall's: i) testimonial obligations; or ii) right to take legal positions in other proceedings to which the Commission is not a party. McCall shall take all necessary steps to ensure that all of his agents and employees under his actual or constructive authority or control understand and comply with this agreement.

3

10.    Affirms that he has agreed to this Order voluntarily, and that no promise or threat has been made by the Commission or any member, officer, agent or representative thereof, or by any other person, to induce consent to this Order, other than as set forth specifically herein.

11.    Consents to the continued jurisdiction of this Court for any purpose relevant to this action, even if McCall now or in the future resides outside the jurisdiction.

## II.    FINDINGS AND CONCLUSIONS

The Court, being fully advised in the premises, finds that there is good cause for the entry of this Order and that there is no just reason for delay. The Court therefore directs the entry of findings of fact, conclusions of law, and an Order of Permanent Injunction, Restitution, Civil Monetary Penalty and Ancillary Equitable Relief pursuant to Section 6c of the Act, as set forth herein.

### A.    Jurisdiction and Venue

12.    This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), which authorizes the Commission to seek injunctive relief against any person, or, to enforce compliance with the Act, whenever it shall appear to the Commission that such person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation or order there under.

13.    Venue properly lies with the Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e) (2006), because McCall transacted business, among other places, in this district, and certain of the transactions, acts, practices, and courses of business in violation of the Act have occurred, among other places, within this district.

### B.    Parties to this Consent Order

14.    Plaintiff Commodity Futures Trading Commission is an independent federal regulatory agency that is charged by Congress with responsibility for administering and

enforcing the provisions of the Act, 7 U.S.C. §§ 1 *et seq.* (2006), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1 *et seq.* (2008).

15.     Defendant Tyrone Cauzae McCall is an individual residing in North Carolina.[1] McCall, individually and as president of MBG and MBG Global, engaged in the business of soliciting prospective pool participants to invest in a commodity pool and accepted funds from pool participants to trade on their behalf in the futures markets. McCall made most of the trading decisions for MBG Global. McCall has never been registered with the Commission in any capacity.

## C.     Findings of Fact

16.     Starting in September 2003 through March 2008, McCall fraudulently solicited and accepted at least $1.2 million from commodity pool participants who believed McCall was trading on their behalf in the futures markets.

17.     In 2004, or perhaps earlier, McCall began operating MBG Global to help solicit individuals to invest in a commodity pool. To target church organizations and members, McCall attended church conventions. At these conventions, McCall circulated MBG Global materials and told congregations that because of his experience and expertise trading in the futures and securities markets, he could increase their wealth.

18.     McCall also invited members of church congregations to his home for presentations on MBG Global. During the presentations, solicitation materials entitled "*MBG Global: Building, Sharing, Spreading Wealth*" were handed out to the attendees. McCall reviewed the materials with the attendees and verbally highlighted key points in the literature, including that MBG Global provided a guaranteed return of principal, no fees, not less than 18% return, optional

---

[1] McCall is currently serving a five to seven and half year sentence at the Albemarle Correctional Facility in New London, North Carolina for obtaining property by false pretense and securities fraud in connection with the operation of MBG and MBG Global.

monthly disbursements, diversification, protection from overnight price drops and consistent returns. The solicitation materials included graphs and matrices that provide a graphic presentation of a pool participant's potential profit if they invested funds with MBG Global.

19.     McCall also told prospective pool participants that he made money by keeping the difference between the promised (18% or greater) return and the high (36% to 40%) returns he generated from trading. These statements were false. McCall knew these statements were false or was reckless in making such statements because, as set forth below, he knew no profits were ever generated from his trading.

20.     McCall did not disclose the risks of trading commodity futures in the written solicitation materials or during his personal solicitations of prospective and actual pool participants.

21.     To support the claims made in the solicitation materials, McCall misrepresented his background and expertise by falsely stating that he enjoyed an illustrious career on Wall Street with a major investment firm. McCall knew these representations were false or was reckless in making such claims. In fact, in account opening documents filled out by McCall in January of 2004 for a TradeStation trading account, he indicated he had no experience trading in futures.

22.     Relying upon the false claims of profits and McCall's experience, various individuals deposited money with McCall, MBG, or MBG Global for McCall to trade. McCall drafted and provided these pool participants with agreements. These agreements guaranteed a return of anywhere from 18% to 60% within a 6 month or 12 month time frame. In addition, the agreements stated that pool participants could elect instead to have monthly payouts. The aforementioned claims in the agreements were false. After executing the agreements, pool participants wired their funds into bank accounts held in the name of MBG and/or accounts controlled by McCall or his wife Terrilynn McCall.

23.     McCall misappropriated pool participants' funds by either using money deposited by new pool participants to pay other pool participants in a manner characteristic of a Ponzi scheme and/or using the money deposited by pool participants as personal income or for business expenses.

24.     The misappropriation of funds occurred through a complicated web of numerous bank accounts from which pool participants' funds were deposited and then transferred in various dollar amounts to other bank accounts controlled by either McCall or his wife Terrilynn McCall.

25.     A nominal amount of pool participants' funds was transferred into futures trading accounts. From October 2004 through August 2006 and October 2007 to April 2008, approximately $400,000 of pool participants' funds were transferred from bank accounts controlled by McCall or his wife, Terrilynn McCall, into four trading accounts held at various Futures Commission Merchants ("FCMs") in the name of MBG, MBG Global or Terrilynn McCall.

26.     McCall did engage in a small amount of futures trading. Of the $400,000 of pool participants' money held at various FCMs, McCall withdrew approximately $248,000 for his own personal use and/or business expenses. He lost approximately $138,000 in trading.

27.     McCall consistently lost money on his trading activities.

28.     While McCall incurred trading losses and misappropriated funds, he continued to solicit prospective and actual pool participants with claims of profitability.

29.     Since at least the fall of February 2004 and continuing to the present, all of the Defendants' pool participants have made demands for the return of their funds.

30.     To date, MBG, MBG Global and McCall have only returned approximately $125,000.

7

31.     McCall also concealed from actual and prospective pool participants a Cease and Desist Order filed by the State of Connecticut against McCall for securities fraud. When prospective pool participants inquired about the actions taken by the State of Connecticut against McCall, he denied any wrong doing and blamed the financial industry as a whole for trying to prevent him from teaching the average person how to make money. These misrepresentations and omissions prevented actual and potential pool participants from suspecting and/or learning that McCall, through MBG and MBG Global, was operating a business based on deception and fraud.

**D.     Conclusions of Law**

32.     Under Sections 4b(a)(2)(i) and (iii) of the Act, 7 U.S.C. §§ 6b(a)(2)(i) and (iii) (2006), in relevant part, it was unlawful for any person, in connection with any order to make or the making of a futures contract, for or on behalf of any other person, (i) to cheat or defraud or attempt to cheat or defraud other persons, and (iii) to willfully deceive or attempt to deceive such other person by any means whatsoever in regard to any such order or contract or the disposition or execution of any such order or contract.

33.     By the conduct described in paragraphs 17 through 31 above, McCall violated Sections 4b(a)(2)(i) and (iii) of the Act, by failing to disclose material facts to actual and prospective pool participants, misrepresenting material facts to actual and prospective pool participants, and misappropriating their funds in connection with the order to make or the making of a futures contract, for or on behalf of actual and prospective pool participants.

34.     Under Section 1a(5) of the Act 7 U.S.C. § 1a(5) (2006), a Commodity Pool Operator ("CPO") is

> any person engaged in a business that is of the nature of an investment trust, syndicate, or similar form of enterprise, and who, in connection therewith, solicits, accepts, or receives from others, funds, securities, or property . . . for the purpose of

8

trading in any commodity for future delivery on or subject to the rules of any contract market or derivatives transaction execution facility.

35. It is unlawful for a CPO, under Section 4$\underline{o}$(1) of the Act, 7 U.S.C. § 6$\underline{o}$(1), (2006), in relevant part to use the mails or any other means of interstate commerce to:

(A) employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or

(B) engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or participant or prospective client or participant.

36. McCall, individually and through MBG and MBG Global, while acting as an unregistered CPO, employed a device, scheme or artifice to defraud pool participants and prospective pool participants or engaged in a transaction, practice or course of business knowingly or which operated as a fraud or deceit upon pool participants and prospective pool participants in violation of Sections 4$\underline{o}$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$\underline{o}$(1)(A) and (B) (2006), as set forth above, including by: (1) making fraudulent representations concerning McCall's trading experience and performance, (2) guaranteeing profits and interest in connection with futures trading, (3) failing to disclose the Cease and Desist Order filed by the State of Connecticut against McCall for securities fraud, (4) failing to disclose the risks of trading commodity futures, and (5) misappropriating pool participants' funds.

37. By the conduct described in paragraphs 17 through 31 above, McCall violated Sections 4$\underline{o}$(1)(A) and (B) of the Act, 7 U.S.C. §§ 6$\underline{o}$(1)(A) and (B) (2006).

38. Unless restrained and enjoined by this Court, there is a reasonable likelihood that McCall will continue to engage in the acts and practices alleged in the Complaint and in similar acts and practices in violation of the Act and Regulations.

### III. ORDER FOR PERMANENT INJUNCTION, RESTITUTION, CIVIL MONETARY PENALTY AND ANCILLARY EQUITABLE RELIEF

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

**A.  Permanent Injunction**

39.  Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2006), McCall, in or in connection with any order to make, or the making of, any contract of sale of any commodity:

>   A.  in interstate commerce or for future delivery that is made, or to be made, on or subject to the rules of a designated contract market, for or on behalf of any other person, or
>
>   B.  for future delivery, or other agreement, contract, or transaction subject to paragraphs (1) and (2) of Section 5a(g) of the Act, that is made, or to be made, for or on behalf of, or with, any other person, other than on or subject to the rules of a designated contract market,

is permanently restrained, enjoined and prohibited from directly or indirectly: cheating or defrauding or attempting to cheat or defraud any other person; and/or deceiving or attempting to deceive any other person by any means whatsoever in regard to any order or contract or the disposition or execution of any order or contract, or in regard to any act of agency performed, with respect to any order or contract for or, in the case of subparagraph (B) above, with the other person in violation of Section 4b(a) of the Act, as amended by The Food, Conservation, and Energy Act of 2008, Pub. L. No. 110-246, Title XIII (the CFTC Reauthorization Act of 2008), § 13102, 122 Stat. 1651 (enacted June 18, 2008), to be codified at 7 U.S.C. § 6b(a);

40.  McCall is permanently restrained, enjoined and prohibited from directly or indirectly:

>   while acting as a CPO, using the mails or other means or instrumentalities of interstate commerce, to employ a device, scheme or artifice to defraud any clients or participants, or prospective clients or participants or engage in a transaction, practice or course of business which operates as a fraud or deceit upon any clients

or participants or prospective clients or participants, in violation of Section 4*o*(1) of the Act, 7 U.S.C. § 6*o* (2006).

41.     McCall is permanently restrained, enjoined and prohibited from engaging, directly or indirectly, in:

        a.     trading on or subject to the rules of any registered entity (as that term is defined in Section 1a(29) of the Act, 7 U.S.C. § 1a(29) (2006));

        b.     entering into any transactions involving commodity futures, options on commodity futures, commodity options (as that term is defined in Regulation 32.1(b)(1), 17 C.F.R. § 32.1(b)(1) (2009)) ("commodity options"), and/or foreign currency (as described in Sections 2(c)(2)(B) and/or 2(c)(2)(C)(i) of the Act as amended by the by the CRA, to be codified in 7 U.S.C. §§ 2(c)(2)(B) and/or 2(c)(2)(C)(i)) ("forex contracts") for his own personal account or for any account in which he has a direct or indirect interest;

        c.     having any commodity futures, options on commodity futures, commodity options, and/or forex contracts traded on his behalf;

        d.     controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity futures, options on commodity futures, commodity options, and/or forex contracts;

        e.     soliciting, receiving or accepting any funds from any person for the purpose of purchasing or selling any commodity futures, options on commodity futures, commodity options, and/or forex contracts;

        f.     applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009); and

        g.     acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2009)), agent or any other officer or employee of any person registered, exempted from registration or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2009).

42.     The injunctive provisions of this Order shall be binding upon McCall, upon any person who acts in the capacity of agent, employee, attorney, successor and/or assign of McCall and upon any person who receives actual notice of this Order, by personal service or otherwise, insofar as he or she is acting in active concert or participation with McCall.

## B.  Restitution

43.    McCall shall pay restitution in the amount of $1,027,000, plus post-judgment interest, to all commodity pool participants who invested money, either directly or indirectly, in MBG and/or MBG Global ("Restitution Obligation").

44.    McCall's Restitution Obligation shall be reduced by the amount of $244,375, which is the Court ordered restitution in the matter of *State of North Carolina, Union County v. Tyrone William Cauzae McCall*,[2] which decreases McCall's remaining Restitution Obligation to $782,625, plus post-judgment interest.

45.    Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

46.    McCall shall satisfy this Restitution Obligation by making payments to the National Futures Association ("NFA") as the Monitor ("Monitor"). The Monitor shall collect restitution payments from McCall and make distributions as set forth below. Because the Monitor is not being specially compensated for these services, and these services are outside the normal duties of the Monitor, the Monitor shall not be liable for any action or inaction arising from its appointment as Monitor, other than actions involving fraud.

47.    McCall shall make restitution payments to the Monitor in the name "McCall Business Group–Restitution Fund" and shall send such restitution payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's, or bank money order, to Office of Administration, National Futures Association, 200 W. Madison Street #1600, Chicago, Illinois 60606-3447 under cover letter that identifies McCall and the name and docket number of

---

[2] As part of McCall's plea deal with the state of North Carolina, a civil judgment was entered against him in the amount of $244,375 to pay back three of his customers: (1) the Elizabeth Missionary Baptist Church for $196,250; (2) Osco Gardin, Jr. for $24,250 and Edward Lawings for $23,875.

the proceeding. McCall shall simultaneously transmit copies of the cover letter and the form of payment to (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement at the same address.

48.    The Monitor shall oversee McCall's Restitution Obligation and shall have discretion to determine the manner for distribution of funds in an equitable fashion to the pool claimants whose claims are or have been allowed in the claims process, or may defer distribution until such time as it deems appropriate.   In the event that the amount of restitution payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative costs of the making a restitution distribution is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission pursuant to Part III.C., below.

49.    To the extent that any funds accrue to the U.S. Treasury as a result of the Restitution Obligation, such funds shall be transferred to the Monitor for disbursement to pool participants in accordance with the procedures set forth in the preceding paragraph.

50.    Pursuant to Rule 71 of the Federal Rules of Civil Procedure, MBG and MBG Global pool participants are explicitly made intended third-party beneficiaries of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the restitution which has not been paid by McCall.

C.    **Civil Monetary Penalty**

51.    McCall shall pay a civil monetary penalty in the amount of $ 1,027,000, plus post judgment interest ("CMP Obligation").

52. Post-judgment interest shall accrue beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

53. McCall shall pay this CMP Obligation by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, the payment shall be made payable to the Commodity Futures Trading Commission and sent to the address below:

Commodity Futures Trading Commission
Division of Enforcement
Attn: Marie Bateman-AMZ-300,
DOT/FAA/MMAC
6500 S. MacArthur Blvd.
Oklahoma City, OK 73169
Telephone: 405-954-6569

If the payment is to be made by electronic funds transfer, McCall shall contact Marie Bateman or her successor at the above address to receive payment instructions and shall fully comply with those instructions. McCall shall accompany the payment of the penalty with a cover letter that identifies McCall and the name and docket number of this proceeding. McCall shall simultaneously transmit copies of the cover letter and the form of payment to: (a) the Director, Division of Enforcement, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581, and (b) the Chief, Office of Cooperative Enforcement, Division of Enforcement, at the same address.

**D.    Priority of Monetary Sanctions and Partial Payments**

54. All payments by McCall pursuant to this Order shall first be applied to satisfaction of the Restitution Obligation, consistent with the authority granted to the Monitor as stated above. After satisfaction of the Restitution Obligation, payments by McCall pursuant to this Order shall be applied to satisfy the CMP obligation.

55. Any acceptance by the Commission and/or Monitor of partial payment from McCall of his Restitution Obligation and/or CMP Obligation shall not be deemed a waiver of McCall's requirement to make further payments pursuant to this Order, or a waiver of the Commission's and/or Monitor's right to seek to compel payment of any remaining balance.

**E.    Cooperation**

56. McCall shall continue to cooperate fully with the Commission and any government agency seeking to enforce the Restitution Obligation, CMP Obligation and/or the ancillary relief provisions of this Order by providing any requested information relating to his financial status, including, but not limited to, income and earnings, assets, financial statements, asset transfers, and tax returns.

**F.    Miscellaneous Provisions**

57. Notices: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:

    Director
    Division of Enforcement
    Commodity Futures Trading Commission
    21st Street NW
    Washington, DC 20581

58. Telephone/Address Changes: In the event that McCall changes his residential or business telephone number(s) and/or address(es) at any time, he shall provide written notice of the new number(s) and/or address(es) to the Commission within twenty (20) calendar days thereof.

59. Acknowledgements: Upon being served with copies of this Order after entry by the Court, McCall shall sign an acknowledgment of such service and serve such acknowledgments on the Court and the Commission within seven (7) calendar days.

60.     <u>Entire Agreement and Amendments</u>: This Order incorporates all of the terms and conditions of the settlement among the parties hereto. Nothing shall serve to amend or modify this Order in any respect whatsoever, unless: (1) reduced to writing; (2) signed by all parties hereto; and (3) approved by written order of this Court.

61.     <u>Invalidation</u>: If any provision of this Order, or the application of any provisions or circumstances is held invalid, the remainder of the Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

62.     <u>Waiver</u>: The failure of any party hereto at any time or times to require performance of any provision hereof shall in no manner affect the right of such party at a later time to enforce the same or any other provision of this Order. No waiver in one or more instances of the breach of any provision contained in this Order shall be deemed or construed as a further or continuing waiver of a breach of any other provision of this Order.

63.     <u>Counterparts and Facsimile Execution</u>: This Agreement may be executed in two or more counterparts, all of which shall be considered one and the same agreement and shall become effective when one or more counterparts have been signed by each of the parties and delivered (by facsimile or otherwise) to the other party, it being understood that all parties need not sign the same counterpart. Any counterpart or other signature to this Agreement that is delivered by facsimile, electronic mail or otherwise shall be deemed for all purposes as constituting good and valid execution and delivery by such party of this Agreement.

64.     <u>Continuing Jurisdiction of this Court</u>: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action.

CONSENTED TO AND APPROVED BY:

Dated: _March 17, 2010_

_____
Defendant Tyrone Cauzae McCall

Dated: _April 21, 2010_

_____
Tracey Wingate
John Dunfee
Paul Hayeck
Division of Enforcement
Commodity Futures Trading Commission
1155 21st Street, N.W.
Washington, D.C. 20581
Phone – (202) 418-5319
Facsimile – (202) 418-5523
Commodity Futures Trading Commission
1155 21st Street NW
Washington, DC 20581
(202) 418-5318
(202) 418-5523 (facsimile)
twingate@cftc.gov

*Attorneys for Plaintiff*

IT IS SO ORDERED.

DATED: _April 23, 2010_

_____
FRANK D. WHITNEY
UNITED STATES DISTRICT JUDGE